O. H. SPRADLEY, Jr., et al., Appellants,

v.

E. R. WHITEHALL et al., Appellees.

Frank C. BLISS et al., Appellants,

v.

Charles P. HARGIS et al., Appellees.

Frank C. BLISS et al., Appellants,

v.

V. O. COX et al., Appellees.

Nos. 15905–15907.

Court of Civil Appeals of Texas.

Fort Worth.

June 6, 1958.

John T. Gano, Taylor & Rumph and Frank Taylor, Fort Worth, for appellants.

Lattimore & Lattimore, Fort Worth, for appellees Whitehall and others.

Tilley, Hyder & Law and Lattimore & Lattimore, Fort Worth, for appellees Hargis and others.

Jack Ray, Fort Worth, for appellees Cox and others.

MASSEY, Chief Justice.

These appeals are companion cases to that of Bliss v. City of Fort Worth, Tex. Civ.App., 314 S.W.2d 611. An opinion in said case has this day been filed with the clerk, the subject matter thereof being the question of the validity of an amendment to the zoning ordinance of the City of Fort Worth.

The question here considered is generally whether allegedly threatened commercial use of the same properties affected by the City's zoning ordinance could, despite their having been re-zoned for commercial uses, be enjoined because of restrictive covenants incident to deed and dedication or because of independent contractual obligation limiting the uses to which said properties might be put as residential. The trial court refused any injunction.

It is believed that at this point it is in order to mention that Mr. Bliss, who developed the improved lots on the north side

of Tarrant Road immediately east of Miller Street in the City of Fort Worth, and has developed or is in the process of developing neighboring properties lying to the north and east of said lots, is also developing a major commercial shopping center on both sides of Tarrant Road approximately one block east of the properties over which this litigation is being pursued. He is of the opinion that he will suffer prejudice through any commercial use of the properties here under consideration, both because he still owns two of the lots within the area in question and because he owns property in the neighboring area, including that being developed into a shopping center.

Being of the opinion that it would be helpful to locate the properties dealt with in this opinion, we include a rough diagram showing the lots and tracts as to which restrictive use is sought to be imposed.

We will first consider the lots lying to the north of Tarrant Road (immediately east of Miller Street) and fronting thereon, being Lots 13–22, inclusive, in Eastwood Addition.

The aforesaid lots are to be treated as a unit for purposes of considering the matter of restrictions. This is true because the instrument whereby the restrictions were imposed treated them as a unit. In 1952, when Bliss was the owner of all the lots, he filed a dedication to the public in which he numbered and described them and placed thereon the covenants and restrictions which were provided to "run with the land." The purpose for which this was done was stated to be for "securing uniformity of construction and design and maintaining the suitability of said property for residential construction."

At the time the case was tried, all of the lots, save two vacant lots belonging to Bliss, had been fully developed. They had residences thereon. Relative to the removal of the restrictive covenants all the owners of the lots (with residences) found themselves on one side of the question opposing Bliss. The evidence demonstrates that Bliss was holding his two lots for speculative purposes and that he did not intend to build his own home thereon. Yet, it was Bliss who sought by his suit to enforce the restrictive covenants, while all the other owners sought to "lift" them by way of a declaratory judgment. The restrictions were removed by the judgment entered, in accord with the owners' prayer for this relief.

In the course of the development of the evidence, Bliss testified that his lots would not be injured by the removal of the restrictions thereon because they were not improved. It is our conclusion that in view of this testimony the suit for injunction and declaratory judgment maintaining the restrictive covenants must fail as a matter of law, and that the owners who seek to remove the restrictions are entitled to the relief prayed for. What

Bliss seeks by his suit is essentially relief in equity, and such remedy presupposes harm which cannot be recompensed in damages. When such a party confesses that he is not exposed to damage or harm by the action threatened, and that he would not be damaged through an accomplishment of such action, he cannot be permitted to resort to equity to accomplish mere harassment of his adversary. 24-A Tex.Jur., p. 49, "Injunctions," sec. 23, "Existence and Character of Injury."

The New Brunswick Savings Institution and the City Savings Bank of Brooklyn were joined with Mr. Bliss in the suit in respect to the matter of the restrictions on the lots in Eastwood Addition. These concerns were mortgagees holding liens upon properties including those of the lot owners who desired the removal of the restrictions. Under the circumstances, i. e., in view of the fact that all the owners of the improved properties jointly seek to remove the restrictive covenants, we have no doubt that the rights, if any, on the part of said mortgagees would be derivative only and that they, as Bliss, have no standing in a court of equity for the maintenance of an action which would prevent such. As mortgagees of the lots and improvements, as to which the mortgagor owners desire the removal of restrictions, their only rights are dependent upon the security for their individual mortgages. The record does not reflect that such security is threatened. See 59 C.J.S. Mortgages § 335, Injunction to Restrain Waste, p. 463.

Neither Bliss nor any mortgage company would be entitled to maintain a suit for injunction regarding the removal of restrictions on the property within the restricted area here considered because they would sustain an injury as a result to neighboring property in which they held an interest. Such a situation was one of the several types of circumstances which inspired modern-day zoning ordinances. In any event, actions for relief of this type

are not within the scope of a cause of action on restrictive covenants.

■ We next consider Lots 1 and 2 in Block A, Midwest Addition, and Lot 18 in Block H of the same Addition. Prior to time of the judgment denying injunctive relief against allegedly threatened commercial use thereof, the owners of said lots abandoned their prayer for affirmative relief and they were only in the position of defendants resisting the injunctive relief sought against them.

The aforesaid lots may be treated as a unit for purposes of considering the matter of restrictions. In view of the bond on appeal in No. 15905, we may consider that of the owners of other lots within the subdivision only O. H. Spradley, Jr., and John H. Shannon still seek to enjoin action allegedly threatened by the owners of said lots, who are E. R. Whitehall and D. C. Whitehall. Only the names of Spradley and Shannon appear on the bond.

The lots in question, along with those of Spradley and Shannon and other lot owners within the Midwest Addition, were burdened with restrictive covenants. The purpose thereof was to insure the development of the subdivision or of the material parts thereof as a residential area.

A most material part of the findings of fact filed by the trial judge relative to the lots in question was that the owners thereof are not threatening to violate any covenants of restriction relating thereto. On the basis of this finding the judgment was entered denying injunctive relief. Spradley and Shannon do not complain because injunction was denied. They do have a point of error, however, in which they complain because there was no declaratory judgment entered establishing the current validity of the restrictive covenants on the lots in question. Such a judgment had been sought as well as injunction. We overrule the point for a variety of reasons typified by the titles of the following authorities. 14–B Tex.Jur., p. 306, et seq., "Declaratory Relief," sec. 11, "Necessity of Justiciable Controversy," sec. 12, "Necessity of Breach of Obligation or Invasion of Right," sec. 14, "Discretion of Court."

■ Finally, we consider the rather large area of land which borders Tarrant Road on the south, and which lies immediately east of Miller Street. The tracts are described as Tract 16 and Tract 16–A, and so marked on our diagram, presently owned by Dr. Charles P. Hargis, along with partners, and by Allen J. Mallory and wife.

Bliss, and the mortgagees of property developed by Bliss, sought to enjoin the use of these tracts for other than residential purposes. These tracts were owned by Hargis in 1952.

On April 15, 1952, Hargis executed and acknowledged before a notary public a letter directed to the Federal Housing Administration, at its Fort Worth office reading as follows:

"Re: Approximately 6 acres out of the North-west Corner of Eastwood Addition, Second Filing, a Subdivision of a Portion of the G. J. Assabranner Survey, Tarrant County, Texas

"Gentlemen:

"This is to state that I, Dr. Charles P. Hargis, as owner of the above captioned property, propose to construct single family residential dwellings under FHA Commitments on the above captioned property, and these houses will be restricted to an area of not less than 700 square feet of floor space.

"The above captioned property is situated directly South of Tarrant Road and East of Miller Street, and being in the above captioned Addition to the City of Fort Worth, Tarrant County, Texas."

On the basis of the letter from Hargis to the Federal Housing Administration, Bliss et al. predicated their prayer for relief

against the Mallorys and against Hargis et al. relative to Tracts 16 and 16–A. The averments of the petition included allegations that on and prior to the date of the letter Bliss was contemplating the development of Eastwood Addition, and the areas lying north and east from Tracts 16 and 16–A, said sections then comprising a rural area; that in order for such to be accomplished it was necessary that streets be built and utilities furnished, etc.; that it was furthermore requisite, in order that the plan receive the necessary cooperation from prospective mortgage holders and the Federal Housing Administration enabling its accomplishment, for Hargis to commit himself to the effect that his property (Tracts 16 and 16–A) would be used for residential purposes; that Hargis was interested in such contemplated development in order that the value of his own property would be enhanced, streets and utilities made available, etc.; that Hargis agreed with Bliss in consideration of the accomplishment of Bliss' aforesaid plan to limit the future use of his property to residential purposes,—to evidence which agreement the letter addressed to the Federal Housing Administration was executed; and that in view of the representations of the letter the federal agency did approve Bliss' plan of development. Bliss further alleged that in reliance upon Hargis' promise he expended many thousands of dollars in building streets and procuring utilities which were beneficial to Hargis' adjoining property, but that Mallory, Hargis et al. were threatening to use said property for commercial purposes in violation of Hargis' aforesaid agreement, having entered into pending negotiations for contracts for the construction of commercial business buildings, etc., and which if accomplished would occasion irreparable damage to Bliss' other property, and the property of those holding under him, within the area. Prayer was for injunction restraining the threatened action.

The evidence disclosed that for purposes of the Federal Housing Administration said agency approved Bliss' proposed plan *of his desired development on Lots 13 through 22, Block 4, Eastwood Addition* (about which we have previously written relative to the removal of restrictions), *subject to certain enumerated conditions.* We are satisfied that what the agency meant was that cooperation would be afforded to the development so that the very favorable type of mortgage loan, known as the "FHA Loan", could be placed on the dwellings to be built on the lots in question.

One of the enumerated conditions was No. 12, reading as follows: "The land to the south of Tarrant Road and east of Pate Drive must be restricted in a manner acceptable to Federal Housing Administration." Tracts 16 and 16–A lie south of Tarrant Road and west of Pate Drive. In any event, Bliss (through an agent) called upon Hargis and conferred with him, and as a result of the conference Hargis executed the letter. The testimony of Bliss' agent was to the effect that "I told Doctor Hargis that, without being able to meet this No. 12 requirement of the FHA subdivision letter, that we would not be interested in the purchase of the south half of Block 4 of the Eastwood Addition; * * *" (not property belonging to Hargis); further, that the requirements of the FHA letter were more or less standard; that the purpose of going to Hargis was to get such assurance as would satisfy the FHA and the purpose of securing the letter was to have something to show that federal agency so that it would make FHA loan commitments; that in view of Hargis' letter the commitments were made, and the houses were built and sold with the aid of the commitments. Apparently, Bliss had never been in contact with Hargis in respect to the use of the property until the federal agency made its conditional approval of Bliss' plan to develop Lots 13–22, inclusive.

Adverting to our holdings at earlier point in this opinion relative to Lots 13 through 22, Block 4, Eastwood Addition (the development on said lots being the basis for

the requirements of the Federal Housing Administration, including condition No. 12), it is to be remembered that we have held that the restrictions imposed on said lots were properly removed by judgment of the court below. They were removed upon the application of all the owners of said lots, being the only lots upon which improvements had been placed pursuant to the approval here under consideration. In our discussion upon this phase we considered the interests of the mortgagees as well as the interest of Bliss.

In our opinion the position of Bliss et al. relative to Tracts 16 and 16–A would necessarily fail in consequence of their failure in respect to their suit to enforce the convenants of restriction on the lots in Eastwood Addition. It was for the protection of the construction to be placed upon these lots that the federal agency required the Hargis letter. With the need for such protection removed incident to the "lifting" of the restrictions on said lots, the foundation for Hargis' action in executing the letter would cease to be material. As consideration (assuming its verity and effectiveness) it had no purpose other than for the benefit of the lots in Eastwood Addition and, necessity therefor passing out of existence, consideration for contract (if any) failed. See 10–A Tex.Jur., p. 534, "Contracts," sec. 263, "—Destruction or Nonexistence of Subject Matter."

Nevertheless, Bliss seeks to procure the asserted benefits under the letter for properties (other than the aforesaid lots) in Eastwood under the theory of contract, and under the contention that he spent money and changed his position because of Hargis' purported agreement. On this theory the state of the record is such that the trial court was left at liberty to believe that Bliss et al. had not sustained the burden of proof. We do not believe the letter constitutes either a contract or a representation, on the strength of which Bliss or any other person was entitled to rely. Hargis made no promise. 10–A Tex.Jur., p. 15, "Contracts," sec. 4, "Promise." Neither

Bliss nor the Federal Housing Administration ever became bound,—nor did Hargis. 10–A Tex.Jur., p. 27, "Contracts," II "Elements of Contract, A. Parties," sec. 11, "In General"; p. 304 et seq., "E. Mutuality," secs. 155–159, incl., "In General— Unilateral and Bilateral Contracts—Tests of Mutuality—Mutuality of Remedy—Implied Obligation."

The judgments are affirmed.